**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**YVONNE D. RICKARD,**

     **Plaintiff,**

**vs.**                     **CIVIL ACTION NO. 3:18-CV-00516**

**NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,**

     **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

     This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered April 3, 2018 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 12, 13)

     Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for judgment on the pleadings (ECF No. 12), **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 13); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court for the reasons stated *infra*.

**Procedural History**

1

The Claimant protectively filed her application for Title II benefits on February 24, 2014, alleging disability since January 4, 2014 because of "depression, torn shoulder, torn knee, carpal tunnel, arthritis, bursitis, fibromyalgia, heart condition, [and] anxiety."[1] (Tr. at 267-269, 301) Her claims were initially denied on July 7, 2014 (Tr. at 183) and again upon reconsideration on October 28, 2014. (Tr. at 198) Thereafter, Claimant filed a written request for hearing on December 5, 2014. (Tr. at 216-217)

An administrative hearing was held on December 8, 2016 before the Honorable Robert B. Bowling, Administrative Law Judge ("ALJ"). (Tr. at 129-162) On January 25, 2017, the ALJ entered an unfavorable decision. (Tr. at 13-36) On March 24, 2017, Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 264) The ALJ's decision became the final decision of the Commissioner on January 27, 2018 when the Appeals Council denied Plaintiff's Request for Review. (Tr. at 3-7)

On March 30, 2018, Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 9, 10) Subsequently, Plaintiff filed a Brief in Support of Judgment on the Pleadings (ECF No. 12); in response, the Commissioner filed a Brief in Support of Defendant's Decision. (ECF No. 13) On August 13, 2018 Claimant filed a Supplemental Brief to Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 14) to which the Commissioner filed her Response in opposition. (ECF No. 16) Consequently, this matter is fully briefed and ready for resolution.

---

[1] In her Disability Report-Appeal, submitted on August 13, 2014, Claimant alleged that her conditions had worsened, including migraines, gout and anxiety. (Tr. at 333) She also began experiencing sleep apnea and "heart problems (irregular heart beat)." (Id.)

2

**Claimant's Background**

Claimant was 51 years old as of the alleged onset date and considered a "person closely approaching advanced age" throughout the underlying proceedings. See 20 C.F.R. § 404.1563(d). (Tr. at 29) Claimant has a high school education and did not attend special education classes. (Tr. at 302) She last worked in August or September 2015 as a housekeeper for Lakin State Hospital (Tr. at 18, 140) and afterwards, Claimant worked as a clerk in a gambling facility for three months but quit because of fainting episodes related to low blood pressure. (Tr. at 136-138)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of

disability. <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. <u>Id</u>. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." <u>Id</u>. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. § 404.1520a(c). Those sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listing of Impairments in appendix 1 to subpart P of part 404 if this chapter.

(4) When we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through December 31, 2020. (Tr. at 18, Finding No. 1) Under the first inquiry, the ALJ determined that Claimant had engaged in substantial gainful activity until August 2015, but she had an unsuccessful work attempt for three months during the period in which she had not engaged in substantial gainful activity for a continuous twelve months. (Tr. at 18, Finding No. 2; Tr. at 19, Finding No. 3) Under the second inquiry, the ALJ found that Claimant had the following severe impairments: dysfunction of the major joints; carp[a]l tunnel syndrome; osteoarthritis; and allied disorders. (Tr. at 19, Finding No. 4) At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 22, Finding No. 5) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work:

> The claimant can stand or walk for six hours in an eight-hour workday. The claimant can sit for six hours in an eight-hour workday. The claimant can never climb ladders, ropes, and scaffolds. The claimant can only occasionally climb ramps and stairs. The claimant can only occasionally balance, stoop, kneel, crouch, and crawl. The claimant can only occasionally reach in front, laterally or overhead with the bilateral upper extremities. The claimant can only occasionally handle, finger and feel with the left upper extremity. The claimant should avoid concentrated exposure to extreme cold, vibration, and environmental irritants such as fumes, odors, dusts, gasses, poorly ventilated areas, and chemicals. The claimant should avoid concentrated exposure to hazards such as the use of moving machinery and unprotected heights.

(Id., Finding No. 6)

At step four, the ALJ found Claimant was unable to perform any past relevant work. (Tr. at 28, Finding No. 7) At the final step, the ALJ found that in addition to the immateriality of the

transferability of job skills, Claimant's age, education, work experience, and RFC indicated that there were jobs that exist in significant numbers in the national economy that Claimant could perform. (Tr. at 29, Finding Nos. 8-11) Finally, the ALJ determined Claimant had not been under a disability from January 4, 2014 through the date of the decision. (Tr. at 30, Finding No. 12)

**Claimant's Challenges to the Commissioner's Decision**

Claimant asserts that the ALJ's RFC determination is unsupported by substantial evidence because he did not consider the severity of her mental impairments – the ALJ did not even reference Claimant's mental impairments in his hypothetical to the vocational expert. (ECF No. 12 at 4-5) Claimant points out that William C. Steinhoff, M.A., a consulting psychologist, found mental impairments severe enough that he gave her a poor prognosis. (Id. at 5) Robert G. Tayengco, M.D., treating physician, opined in a letter that that Claimant could not work because of her severe pain and anxiety due to pain. (Id.) Claimant further states that the ALJ did not "exhibitize" this letter or even mention Dr. Tayengco's opinion. (Id.)

Claimant argues further that the ALJ gave Mr. Steinhoff's opinion partial weight, even though Mr. Steinhoff performed the evaluation on behalf of the Agency; Claimant suggests that the ALJ should have provided interrogatories to Mr. Steinhoff and had a duty to follow up with Mr. Steinhoff since the ALJ found his opinion lacked information concerning Claimant's RFC. (Id. at 6) This duty is magnified since Claimant had no representation at the hearing, thus, the ALJ failed in his obligation to develop a fair and full record. (Id.)

Claimant contends the final decision is not supported by substantial evidence and asks for her disability benefits be awarded as provided by law, or alternatively, for remand in order to have another hearing in accordance with the Regulations. (Id.)

In response, the Commissioner states that the ALJ's evaluation of Claimant's mental health limitations is supported by substantial evidence and further asserts that in addition to identifying no limitations that should have been included in her RFC, Dr. Steinhoff determined Claimant's mental impairments caused only mild limitations; two State agency psychologists confirmed this, who reviewed Dr. Steinhoff's report. (ECF No. 13 at 8) Because her mental impairments caused only mild limitations, the Regulations define Claimant's mental impairments non-severe. (Id. at 8-9) Further, the Commissioner argues that Claimant's diagnoses of anxiety and depression are not enough to establish a severe impairment,[2] and further, the ALJ not only addressed this in full by referencing all the relevant evidence pertinent to her mental health issues, but he also thoroughly considered the report provided by Dr. Steinhoff, and ultimately found Claimant had no functional deficits related to her mental impairments. (Id. at 9-12) The Commissioner contends that Claimant's position with the ALJ's interpretation of Dr. Steinhoff's report is little more than a request that this Court reweigh the evidence and come to a different conclusion, which is not Court's role. (Id. at 13)

With regard to Claimant's assertion that the ALJ failed to mention Dr. Tayengco's opinion, the Commissioner points out that this letter was not provided until after the ALJ issued his decision. (Id.) The Appeals Council addressed this evidence and found that it would not change the outcome of the ALJ's decision, thus the Appeals Council did not "exhibitize" the letter. (Id.) The Appeals Council advised Claimant that the rules concerning review were changed, and informed her via letter that additional evidence must be new, material, relates to the period at issue, and shows a reasonable probability of changing the outcome of the decision. (Id. at 13-14)

---

[2] Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

Claimant addresses none of these changes in the Regulations governing review, and fails to show how Dr. Tayengco's two-sentence letter would have changed the outcome in light of the majority of the evidence showing Claimant's mental impairments were non-severe. (Id. at 14)

The Commissioner states that the ALJ provided a number of reasons why he gave Mr. Steinhoff's opinion partial weight, and further, argues that the ALJ had no such obligation to obtain additional information from Mr. Steinhoff. (Id. at 15-16) The Regulations are clear that the burden of proving disability is upon the claimant. (Id. at 16) The Regulations vest an ALJ with discretion whether to order a consultative examination. (Id.) Mr. Steinhoff's report was not ambiguous necessitating follow-up, therefore the ALJ had sufficient evidence to make a decision. (Id.)

With regard to Claimant's status of having no representation at the hearing, the record shows that Claimant retained counsel shortly after Mr. Steinhoff's examination and did not mention or take issue with his opinion. (Id. at 17) Claimant's counsel withdrew from representing Claimant around the time Claimant stopped working as a housekeeper for the State hospital and began her work in the gambling facility. (Id.) At the administrative hearing, the ALJ explicitly explained Claimant's right to representation and advised that if necessary, he would seek additional evidence. (Id.) At the close of the hearing, the ALJ also discussed with Claimant what additional evidence was needed, subsequently, the ALJ sought and received over a hundred pages of additional records from Claimant's care providers. (Id.) This shows that the ALJ was aware of his duties to develop the record and did so fully. (Id.)

The Commissioner concludes that the final decision is supported by the substantial evidence and asks the Court to affirm the decision. (Id. at 18.)

Claimant then filed her Supplemental Brief explaining that after she filed her initial Brief,

the SSA determined that she was disabled as of January 26, 2017, the day after the ALJ issued his unfavorable decision. (ECF No. 14. at 1) Because cases[3] within this District have found that a disability determination that commences the day after an ALJ's unfavorable decision constitutes new and material evidence, Claimant asserts that remand is necessary. (Id.) Claimant concedes that another line of cases reject this view, holding that the underlying evidence, not the award, determines propriety of remand as new and material evidence. (Id. at 2)

Claimant directs the Court's attention to the disability determination (ECF No. 14-2) dated July 5, 2018 which references Claimant's physical impairments, osteoarthritis and allied disorders, and her mental impairments, depressive, bipolar and related disorders, which were the same impairments noted in the underlying claim which justified her subsequent award of benefits. (ECF No. 14 at 2) In addition, Claimant refers to the Disability Determination Explanation, dated July 5, 2018, which explicitly states that "The 01/25/2017 opinion expressed by ALJ Robert B. Bowling is NOT APPLICABLE because the ALJ only adjudicated the claim on the basis of physical impairments." (ECF No. 14-3 at 10) Claimant argues that the subsequent award demonstrates that not only did the ALJ fail to properly consider her mental impairments, but also the subsequent award constitutes new and material evidence justifying reversal or remand of the previous unfavorable decision. (ECF No. 14 at 2)

In her Response (ECF No. 16), the Commissioner points out that Claimant's subsequent award does not affect this appeal for two reasons:

First, the majority of the courts of appeals, including the Fourth Circuit, do not hold that a subsequent favorable decision is material evidence warranting remand. Baker v. Comm'r of Soc.

---

[3] See Bradley v. Barnhart, 463 F.Supp.2d 277 (S.D.W. Va. 2006); Reichard v. Barnhart, 285 F.Supp.2d 728 (S.D.W. Va. 2003).

Sec., 520 F.App'x 228 (4ᵗʰ Cir. 2014). (Id. at 2) The Commissioner points out that since the Baker decision, numerous courts within the Fourth Circuit have held that a subsequent award of benefits is not itself cause for remand. See, e.g., Moyer v. Berryhill, 2017 WL 3909736, at *4 (W.D. Va. Aug. 14, 2017); McComas v. Berryhill, 2017 WL 1181499, at *8 (S.D.W. Va. Mar. 28, 2017); Gray v. Colvin, 2015 WL 5782076, at *4-5 (D.S.C. Sept. 30, 2015); Pearson v. Colvin, 2015 WL 3757122, at *45-46 (N.D.W. Va. June 16, 2015); Baker v. Colvin, 2015 WL 3562164, at *2-3 (D.S.C. June 5, 2015); Mannon v. Colvin, 2013 WL 5770524, at *18-19 (S.D.W. Va. Oct. 24, 2013). (Id. at 3) In this case, Claimant is not relying on new evidence in her subsequent claim, she only relies on her notice of award, determination transmittal, and determination explanation, none of which constitute new and material evidence warranting remand. (Id. at 4)

Second, Claimant's appeal in this case only pertains to her disagreement with the ALJ's determination of her mental impairments, not her physical impairments. (Id.) The exhibits Claimant attached relating to her subsequent award only confirms the ALJ's finding that her mental impairments were non-severe, therefore the subsequent award does not support her arguments raised in this appeal. (Id. at 5)

The Commissioner asks that the final decision be affirmed because it is supported by substantial evidence. (Id. at 6)

**The Relevant Evidence of Record**[4]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

Robert G. Tayengco, M.D., Primary Care Physician:

---

[4] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

11

Case 3:18-cv-00516    Document 17    Filed 08/24/18    Page 12 of 30 PageID #: 955

Claimant sought a general check-up with Robert G. Tayengco, M.D., at Pleasant Valley Hospital in February 2013. (Tr. at 418) She reported a history of anxiety and depression (Tr. at 419), but in her review of symptoms, Claimant denied anxiety. (Tr. at 421) On examination, Dr. Tayengco reported that Claimant was alert, comfortable, and calm with an appropriate affect. (Id.) There is no mention of anxiety or depression.

Claimant returned to Dr. Tayengco for various ailments over through the next year and a half but continued to deny anxiety in her review of symptoms (Tr. at 399, 405, 416, 563) on all but one occasion. (Tr. at 408-411) On that occasion, September 19, 2013, Dr. Tayengco explained that Claimant took Xanax to help her sleep. (Tr. at 408) Claimant complained of anxiety and Dr. Tayengco's examination notes reported anxiety as well. (Tr. at 411) However, by December 2013, Claimant denied anxiety, and Dr. Tayengco did not observe anxiety either. (Tr. at 405)

The next month, on January 30, 2014, Dr. Tayengco examined Claimant in connection with her complaints of muscle aches, arm and wrist pain, fatigue, and foot pain. (Tr. at 396) Claimant again denied anxiety symptoms. (Tr. at 399) Dr. Tayengco reported that he "wrote a letter stating that . . . her work is restricted because of her fibromyalgia . . . ." (Tr. at 400) He did not mention anxiety in his letter.

On August 14, 2014, Claimant reported depression and anxiety to Dr. Tayengco. (Tr. at 554, 556-557) Dr. Tayengco diagnosed Claimant with anxiety, and reported that she had cervical spine pain and bilateral radiculopathy, but she was still working 40 hours per week as a housekeeper. (Tr. at 558)

After the ALJ issued his decision, Claimant submitted a letter from Dr. Tayengco dated February 2, 2015, which stated that Claimant was "unable to work due to her severe pain and

12

anxiety which is related to her chronic pain." (Tr. at 163)

William C. Steinhoff, M.A., Consultative Examiner:

Mr. Steinhoff, a consultative examining psychologist, examined Claimant on June 4, 2014. (Tr. at 480-484) Mr. Steinhoff reported that there were "[n]o records available at the time of the evaluation." (Tr. at 481) Additionally, Claimant told Mr. Steinhoff that she had no history of mental treatment. (Id.)

Claimant told Mr. Steinhoff that she graduated high school with average grades in the A-B range, never repeated a grade, and was not in special education. (Tr. at 482) She reported that she got out of bed by 4:30 a.m., went to work by 6:30 a.m., and returned home at 3:30 p.m. (Tr. at 483) After work, she sat outside to relax, worked in her garden, watched TV after dinner, and went to bed between 7 p.m. and 9 p.m. (Id.) She performed her own personal care on a daily basis, but her roommate prepared meals. (Id.) She cleaned her own bedroom and bathroom, did her own laundry, and worked in her garden "a little bit." (Id.)

Claimant's reported chief complaints were nerve problems, arthritis, fibromyalgia, bursitis, and depression. (Tr. at 481) Mr. Steinhoff discussed Claimant's "work interference," focusing on her pain, breathing issues, and depression. (Id.) He observed that she was working full time and that her disability date was "unknown." (Id.)

On examination, Mr. Steinhoff reported that Claimant's eye contact was fair, her speech was clear, coherent, and relevant, and her social functioning appeared mildly impaired. (Tr. at 482-483) Her thought process was coherent and clear, and she had normal verbal abstract reasoning and a normal general fund of knowledge. (Id.) Her concentration was mildly impaired. (Tr. at 483) She could not perform serial sevens and could perform serial threes very slowly with one error.

(Id.) She recalled up to five digits forward and three digits backward on the Digit Span. (Id.) Her pace was "[m]ildly slow," and her persistence was "[m]ildly limited" (Id.) Claimant's immediate memory was within normal limits, as she was able to recall four out of four items immediately after they were verbally presented. (Id.) Her remote memory was also normal, as evidenced by her ability to recall the name of the current and most recent past President of the United States and other historical information without any difficulty. (Id.) Claimant's judgment appeared average or adequate (Id.)

Mr. Steinhoff assessed Claimant's mood as "mildly depressed." (Id.) He diagnosed Claimant with unspecified depressive disorder and unspecified anxiety disorder. (Id.) Her prognosis was poor. (Tr. at 484)

State Agency Psychologist Assessments:

In July 2014, Jeff Harlow, Ph.D. examined Claimant's records, including Mr. Steinhoff's report, and evaluated Claimant's affective and anxiety disorders. (Tr. at 175-177) He determined that Claimant had only mild restriction of activities of daily living and mild difficulties in maintaining social functioning and maintaining concentration, persistence, and pace. (Tr. at 176) Dr. Harlow also determined that Claimant had no episodes of decompensation. (Id.) Dr. Harlow explained that Mr. Steinhoff evaluated Claimant for anxiety and depressive disorder, but "[t]hese disorders are NOT SEVERE because KEY-Functional Capacities are indicated to be mildly deficient by results of the consultative evaluation." (Tr. at 177) (emphasis in original)

On reconsideration, in October 2014, Ann Logan, Ph.D. re-evaluated Claimant's updated records and Dr. Harlow's opinion. (Tr. at 191-192) Dr. Logan also identified Dr. Tayengco's August 14, 2014 diagnoses of depression and anxiety, but otherwise affirmed Dr. Harlow's opinion

14

that Claimant did not have severe mental impairments. (Tr. at 190)

**The Administrative Hearing**

Claimant Testimony:[5]

Claimant testified that she takes Mirtazapine for depression, and she takes Cymbalta for fibromyalgia, though it helps a little bit with her depression as well. (Tr. at 147) She had never been hospitalized for depression and receives no individual or group therapy for her depression. (Tr. at 149)

Claimant previously had a roommate, and although she cleans her own home, her daughter comes and helps her; her daughter does the sweeping and vacuuming. (Tr. at 150, 151) Claimant can do her own laundry and does not cook, but prepares simple meals like sandwiches. (Tr. at 150) She stated that she has her sister pay her bills, although Claimant goes grocery shopping. (Tr. at 151) For social activities, Claimant testified that she only visits with her sister and daughter. (Id.) When it is warm outside, such as in the summertime, Claimant will go out, but does not do much of anything besides let her dog out on a chain. (Id.) Claimant provides her dog with food and water. (Id.)

Gina Baldwin, Vocational Expert ("VE") Testimony:

In response to the only hypothetical question[6] posed by the ALJ, the VE testified that Claimant could not perform her past work, although she could perform a reduced range of jobs in the light work classification, such as a counter clerk, and in the sedentary classification, such as call-out operator and surveillance system monitor. (Tr. at 157-158)

---

[5] Because Plaintiff's appeal concerns the ALJ's treatment of her mental impairments, the undersigned focused on Claimant's testimony regarding same.
[6] This was *verbatim* to the controlling RFC described *supra*.

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**Analysis**

Claimant contends that the ALJ failed to consider the limitations related to her mental impairments. She specifically calls the Court's attention to the opinion letter from Dr. Tayengco and Mr. Steinhoff's consultative report that support her contention that her mental impairments were severe enough to warrant consideration in the ALJ's RFC assessment. Claimant argues that because she was unrepresented during the hearing, the ALJ was obligated to develop a full and fair record of the evidence. Lastly, Claimant states that since she had been found disabled by the SSA

in her subsequent application for benefits, filed on January 27, 2017, the date after the ALJ's unfavorable decision, necessitating remand because this constitutes new and material evidence.

Determining Severe Impairment:

A "severe" impairment is one "which significantly limits your physical or mental ability to do basic work activities." See 20 C.F.R. § 404.1520(c); see also Id. § 404.1521(a). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." Id. § 404.1521(b). The Regulations provide examples of these activities: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, coworkers and usual work situations; and (6) dealing with changes in a routine work setting. Id. Contrariwise, an impairment may be considered " 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

Additionally, Claimant had to prove that she had an impairment (or combination of impairments) that had more than a minimal effect on her ability to do basic work activities for a continuous period of no less than 12 months. 20 C.F.R. § 404.1505(a); SSR 96-3, 1996 WL 374181. Additionally, the impairment must not "be reasonably controlled by medication or treatment[.]" See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Claimant also bears the burden of establishing a disabling impairment. See Heckler v. Campbell, 461 U.S. 458, 460 (1983); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (holding that the claimant bears the burden of

proof and persuasion at steps one through four, stating "it is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so").

In this case, the ALJ acknowledged Claimant's claims of disability due to her physical impairments, as well as her mental impairments, including affective disorder and anxiety disorder, but also noted that her mental impairments did not meet Listing requirements. (Tr. at 19)

When an adjudicator fails to list an additional impairment as severe at step two, it is not reversible error if the adjudicator finds at least one other severe impairment and continues with the remaining steps in the sequential evaluation process. Ashby v. Colvin, 2015 WL 1481625, at *9 (S.D.W. Va. Mar. 31, 2015). The ALJ considered Claimant's impairments in the subsequent steps in the sequential evaluation process, and performed the "special technique" pursuant to Section 404.1520a, finding that Claimant had mild limitations in all four areas of mental functioning. (Tr. at 19-21)

As pointed out by the Commissioner, the ALJ specifically addressed Mr. Steinhoff findings that demonstrated Claimant had mild limitations in understanding, remembering or applying information. (Tr. at 19-20) The ALJ explained that Mr. Steinhoff reported that Claimant had completed high school with good grades, and that on examination, her thought process was coherent and clear. (Tr. at 19, 482-483) The ALJ then discussed Mr. Steinhoff's assessment of Claimant's memory, which was within normal limits. (Tr. at 19, 483) The ALJ noted that she could recall the names of recent presidents and provide her own biographical information without issue. (Id.) The ALJ referenced Mr. Steinhoff's conclusion that Claimant's verbal abstract reasoning was normal as well, and that her general fund of knowledge was adequate. (Id.)

Next, the ALJ discussed Claimant's ability to interact with others; the ALJ again referred to Mr. Steinhoff's evaluation findings, which confirmed she had a mild limitation. (Tr. at 20) Mr. Steinhoff's examination revealed Claimant presented well during her examination, made eye contact, that her speech was clear, coherent, and relevant. (Tr. at 20, 480, 482-483) Additionally, the ALJ observed that Claimant admitted in her function report that she gets along with friends, family and others, including authority figures and has never been fired for trouble getting along with others. (Tr. at 20, 329)

Again referencing Mr. Steinhoff's report as well as Claimant's function report, the ALJ noted the evidence corroborated a finding of mild limitation in concentrating, persistence or pace. (Tr. at 20, 323-330, 480-484) Mr. Steinhoff noted Claimant was fully oriented, with coherent and clear thought processes, and had normal judgment. (Tr. at 20, 482-483) The ALJ also discussed the psychologist's opinion that Claimant's concentration was mildly impaired as evidenced by her difficulty completing serial sevens, but she demonstrated ability to perform serial threes at a slow pace. (Tr. at 20, 483) The ALJ then noted Claimant's function report, wherein she admitted she could concentrate enough to drive, pay bills, count change, handle a checking or savings account, use a checkbook and/or money order, and that she claimed she could pay attention for ten minutes as well as follow written and spoken instructions. (Tr. at 20, 326-329)

With regard to Claimant's ability to adapting or managing herself, the ALJ found she had a mild limitation, again referring to Mr. Steinhoff's examination which noted Claimant reported that she woke up each day at 4:30 a.m., went to work by 6:30 a.m., returned home at 3:30 p.m., relaxed through various activities, and went to bed by 9:00 p.m. (Tr. at 20, 483) The ALJ further noted that Claimant reported to perform her own personal care on a daily basis, cleaned her

bedroom and bathroom, did her own laundry, and worked in her garden. (Id.) The ALJ explained that Mr. Steinhoff's report was consistent with Claimant's self-reports of independent self-care and housekeeping. (Tr. at 20, 324-326) She also reported that she did not need reminders to take medication, went outside each day, shopped, and sewed and painted for hobbies. (Id.)

In sum, the ALJ found that in each of the four areas of mental functioning, the evidence supported a finding of mild limitations, and ultimately determined that Claimant's mental impairments, that is her depression and anxiety, were "non-severe." (Tr. at 19) Additionally, the ALJ noted Claimant "has not had consistent mental health treatment for anxiety and depression", though her primary care physician treated her for same. (Id.) The ALJ also recognized Claimant had not been hospitalized for anxiety and depression. (Id.) Finally, the ALJ noted that the State agency found her anxiety and depression to be non-severe impairments and the ALJ "agree[d] with this assessment. (Id.) As noted *supra*, State agency psychologist Dr. Harlow expressly noted that Mr. Steinhoff's evaluation of Claimant's anxiety and depression supported a determination that they were "NOT SEVERE." (Tr. at 177) (emphasis in original)

There is no question that the record is sparse concerning Claimant's mental health treatment. Indeed, ***during*** the relevant period, the medical records from Claimant's primary care physician indicates that only once did Claimant report depression and anxiety (Tr. at 554, 556-557, 558); ***before*** the relevant period, Claimant reported anxiety to her primary care physician only once. (Tr. at 408-411) Further, Claimant's primary care treatment records indicate that her mental impairments must have been "reasonably controlled" by medication, because she denied symptoms of anxiety nearly a year after initially complaining of same. Gross, 785 F.2d at 1166.

Accordingly, the undersigned **FINDS** substantial evidence supported the ALJ's step-two

determination that Claimant's mental impairments were non-severe.

The RFC Assessment:

It is known that the RFC assessment is an issue reserved to the Commissioner, notwithstanding any medical source opinions concerning the RFC assessment. See 20 C.F.R. § 404.1527(d)(2). Because Claimant takes issue with the ALJ's evaluation of Mr. Steinhoff's opinion, and failure to even address Dr. Tayengco's opinion, it is important to review how Section 1527 governs the SSA's criteria for evaluating opinion evidence; per § 404.1527(a)(2):

> Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions. (emphasis added)

The Regulations provide that an ALJ must analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527(c)(1)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors.

As an initial matter, Claimant's argument that the ALJ erred because he failed to consider or "exhibitize" Dr. Tayengco's opinion dated February 2, 2015 lacks merit. The record shows that Claimant submitted this evidence *after* the ALJ issued his decision. Of interest here, Dr. Tayengco's opinion is simply that Claimant "is unable to work due to her severe pain and anxiety which is related to her chronic pain." (Tr. at 163) To the extent that Dr. Tayengco opined that Claimant was disabled as a result of her impairments, even if this evidence had been submitted to the ALJ before he issued his decision, he was under no duty to give any special significance to this opinion. See 20 C.F.R. § 404.1527(d)(1).

There is no dispute that the ALJ gave Mr. Steinhoff's opinion "partial weight" and that he diagnosed Claimant with anxiety and depression in June 2014. (Tr. at 27) As discussed above, the ALJ reviewed this opinion thoroughly, noting that "this opinion addresses the claimant's anxiety and depression but does not indicate the level of the impairment and how it affects the claimant mentally." (Id.) However, the ALJ acknowledged that Mr. Steinhoff opined that Claimant's "anxiety and depression limits her residual functional capacity." (Id.) As pointed out by the Commissioner, Claimant was employed full time during this evaluation, and Mr. Steinhoff listed her disability date as "unknown". (Tr. at 480, 481) Although Mr. Steinhoff gave Claimant a "poor" prognosis, he gave no opinion as to whether Claimant's mental impairments precluded work. The ALJ determined Mr. Steinhoff's opinion was entitled to partial weight, finding it "inconsistent with the numerous treatment records which indicate normal psychiatric findings on Review of Systems and on Physical Examinations by her treating and referring physicians." (Tr. at 27) It is noted that Claimant does not dispute this inconsistency.

The Court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Given the ALJ's awareness of the conflicting evidence, and that the majority of the evidence supported the ALJ's evaluation of Mr. Steinhoff's opinion, the undersigned **FINDS** that substantial evidence supported the ALJ's assignment of "partial weight" to Mr. Steinhoff's opinion. Moreover, the undersigned agrees with the Commissioner that the ALJ was under no duty to issue additional interrogatories to Mr. Steinhoff because there was sufficient evidence to render a determination of the inconsistent evidence. Notably, the Regulations provide that an ALJ has

*discretion* to recontact a medical source if additional evidence or clarification is necessary. See 20 C.F.R. § 404.1520b(c)(1). As the ALJ was vested with this discretion, in addition to the lack of ambiguity of Mr. Steinhoff's opinion, the ALJ complied with the Regulations in evaluating Mr. Steinhoff's opinion.

Further, the resulting RFC assessment concerning Claimant's impairments included the required narrative discussion that allows for meaningful judicial review and with respect to the findings of fact and conclusions provided in the written decision, it is also clear that the ALJ complied with the mandate to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

Accordingly, the undersigned **FINDS** Plaintiff's argument that the ALJ failed to comply with the Regulations in the RFC assessment with regard to her mental impairments lacks merit.

The Duty to Develop the Record

The Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id. In Cook, the Court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. Id.

Nevertheless, it is Claimant's responsibility to prove to the Commissioner that she is disabled. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s).") Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that she has an impairment that is disabling. Id. § 404.1512(c). In Bowen v. Yuckert, the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . . If the process ends at step two, the burden of proof never shifts to the Secretary. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Finally, although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). Claimant bears the burden of establishing a *prima facie* entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, Claimant "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

In this matter, Claimant was unrepresented at the time of the administrative hearing, and although the record shows that she retained counsel on August 14, 2014 (Tr. at 206), Claimant's counsel withdrew from representation on September 22, 2015. (Tr. at 240-241) At the

administrative hearing, the ALJ noted Claimant's previous counsel withdrew and confirmed with Claimant that she had no other counsel or representative since that time. (Tr. at 132) Prior to taking testimony, the ALJ explained to Claimant about her right to have representation at the hearing and asked her if she wanted to proceed without a representative. (Tr. at 132-133) Claimant stated she wanted to proceed with the hearing without a representative. (Tr. at 133) The ALJ then explained to Claimant that he would obtain any additional evidence that may be needed prior to rendering a decision. (Id.) Before closing the hearing, the ALJ again discussed with Claimant what other sources of information he should obtain prior to issuing his decision. (Tr. at 159-162) Indeed, Claimant identified several sources of information during this colloquy. (Id.) Subsequently, the ALJ obtained several additional records from Claimant's care providers. (Tr. at 698-835) Clearly, the ALJ was aware of his duty to develop the record and proceeded to do so.

The undersigned therefore **FINDS** that Claimant's argument that the ALJ failed to develop the record lacks merit.

The Subsequent Award for Benefits:

Claimant's final argument concerns the fact that the SSA just recently determined (as of July 20, 2018) that she was disabled as of January 26, 2017, the day after the ALJ's unfavorable decision, thus constituting new and material evidence necessitating remand. (ECF No. 14 at 1; ECF No. 14-1 at 1) Social Security Regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), a court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97-98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). Where there is new medical evidence, a court may

remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163.

Pursuant to 28 U.S.C. § 405(g), remand is warranted "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" Evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding and is not "duplicative or cumulative." Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc) superseded by statute on other grounds, 20 C.F.R. § 404.1527. It is noted that the Regulations governing the standard for the materiality of new evidence has changed: 20 C.F.R. § 404.970(a)(5) provides that "additional evidence that is new, material and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." (emphasis added)

Claimant cites Bradley v. Barnhart, 463 F.Supp.2d 577 (S.D.W. Va. 2006) and Reichard v. Barnhart, 285 F.Supp.2d 728 (S.D.W. Va. 2003) as support for her assertion that a remand is warranted where a subsequent award of benefits within close proximity to the date of an unfavorable decision compelled a sentence six remand. Claimant directs the Court's attention to three documents issued by the SSA in connection with her subsequent award. (See Plaintiff's Supplemental Brief Exhibits Nos. 1-3; ECF Nos. 14-1, 14-2, 14-3) The first document is the notice of award dated July 20, 2018 wherein the SSA found Claimant became disabled on January 26,

2017. (ECF No. 14-1 at 1) The second document concerns the Disability Determination and Transmittal which documents that Claimant filed her application on April 7, 2018 and confirms Claimant's disability as of January 26, 2017. (ECF No. 14-2) This document also lists Claimant's primary diagnoses as "osteoarthrosis and allied disorders" and secondary diagnoses as "depressive, bipolar and related disorders". (Id.) The third document concerns the SSA's Disability Determination Explanation. (ECF No. 14-3) It states that Claimant's alleged and established onset date was October 1, 2015. (Id. at 2, 14)

Of interest here is that in Bradley v. Barnhart, this Court distinguished the facts therein from Bruton v. Massanari, 268 F.3d 824 (9th Cir. 2001), which was cited by the Commissioner at the time in support of her argument against remand: in Bruton, the second application involved **different** medical evidence, a **different** time period, and a **different** age classification. Bradley, 463 F.Supp.2d at 580. (emphasis added) In Reichard v. Barnhart, this Court found remand was necessary because the ALJ's subsequent decision "show[ed] that **some of the evidence he considered was in the record before him on the first applications**[.]" 285 F.Supp.2d at 734. (emphasis added)

As demonstrated by the Commissioner, other courts within the Fourth Circuit have held that the mere fact of a subsequent award of benefits recognizing disability beginning within close proximity to the date of an unfavorable decision does not *ipso facto* compel a sentence six remand. See also, Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 654 (6th Cir. 2009) (holding remand was not warranted on the basis of a subsequent grant of benefits, by itself, since the subsequent grant of benefits **may be based upon a new age classification**, a worsening of the claimant's condition, or some other change) (emphasis added). In Allen, the Sixth Circuit held that only the **evidence**

supporting the subsequent favorable decision may **constitute new evidence**. 561 F.3d at 652. Claimant has not shown what new evidence supported her subsequent award; interestingly, with regard to her mental impairments, the evidence remained consistent insofar as the SSA determined them to be "non-severe."[7] (ECF No. 14-3 at 7-8, 9) In that respect, the subsequent award was certainly not supported by any "new and material" mental impairments-related evidence. Additionally, Claimant has made no showing that any "new and material" physical impairments-related evidence supported the subsequent award.

What is significant here is that Claimant's subsequent application is distinguishable from her earlier application in at least two important, yet obvious respects:

The first is that she was not working at substantial gainful activity levels during the relevant period – the established onset date is October 1, 2015. (Id. at 14)

The second is that Claimant changed age categories – from closely approaching advanced age to advanced age at the time she filed her application for benefits. (Id. at 2)

Based on Claimant's past relevant work and having been assessed an RFC for light work, the SSA determined Claimant was disabled in her subsequent application pursuant to the Medical-Vocational Guidelines, specifically Rule 202.04. (Id. at 13-14) See 20 C.F.R. Pt. 404, Subpt. P, App. 2. To use a popular colloquialism in these cases, Claimant simply "gridded out." This is precisely the kind of subsequent award that that does not warrant remand of a prior unfavorable decision that the courts in Bruton, Allen, Baker and their progeny have consistently held. From all appearances, Claimant presented the same evidence in the subsequent application as she did in the previous application and the only difference is that she was unemployed and older. Accordingly,

---

[7] Jeff Harlow, Ph.D. found that Claimant had no limitations in any of the four areas of mental functioning. (ECF No. 14-3 at 8)

the undersigned **FINDS** that Claimant has not demonstrated how her subsequent award for benefits was the result of new and material evidence that would have in all reasonable probability changed the outcome of the prior decision, thus warranting remand.

Additionally, the undersigned **FINDS** that the Commissioner's final decision that Claimant was not disabled during the relevant period in the prior decision is based on substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for judgment on the pleadings (ECF No. 12), **GRANT** the Defendant's request to affirm the final decision (ECF No. 13), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: August 24, 2018.

Omar J. Aboulhosn
United States Magistrate Judge